UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **BENDETT & MCHUGH, P.C.,**<br><br>            **Plaintiff,**<br>**vs.**<br><br>**ROUNDSTONE MANAGEMENT, LTD. AND THAXTON GROUP, INC. D/B/A SHEA BARCLAY GROUP,**<br><br>            **Defendants** | **Civil Case No.**<br><br><br><br><br><br>**AUGUST 7, 2020** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### THE PARTIES

1.      At all times referred to herein, the plaintiff, Bendett & McHugh, P.C., has been and continues to be a professional corporation organized and existing under the laws of the State of Connecticut, with its principal place of business located at 270 Farmington Avenue, Suite 151 in Farmington, Connecticut 06032 ("Bendett & McHugh").

2.      At all times referred to herein, the defendant, Roundstone Management, LTD. ("Roundstone"), has been and continues to be a limited liability company organized and existing under the laws of the State of Virginia, with its principal place of business located at 27887 Clemens Road, Suite 1, Westlake, Ohio 44145.

3.      At all times referred to herein, the defendant, Thaxton Group, Inc. d/b/a Shea Barclay Group ("Shea Barclay"), has been and continues to be a corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 501 East Kennedy Boulevard, Suite 1000, Tampa, Florida 33602.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this civil action because the parties are citizens of different states under 28 USC § 1332 and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5.      This Court has personal jurisdiction over the Defendants because under Connecticut General Statutes § 33-929(f)(1) the foreign corporation Defendants are subject to suit in this state where the causes of action pled in this Complaint arise out of contracts, here the partially self-funded health benefit plan, to be performed in this state, Defendants committed tortious acts within this state and the causes of action pled in this Complaint arise out of such tortious acts and Defendants otherwise conduct business within the State of Connecticut.

6.      Venue is proper under 28 USC § 1391 as a substantial part of the events or omissions giving rise to this claim occurred in this district.

## GENERAL ALLEGATIONS

7.      At all times referred to herein, Roundstone has been in the business of solicitation, negotiation, procurement, provision, effectuation and the ongoing operation of partially self-funded health benefit plans (which require the purchase of health insurance) to businesses with twenty to one thousand employees, such as Bendett & McHugh.

8.      At all times referred to herein, Roundstone held itself out to be experienced professionals offering comprehensive quality employee health benefit products.

9.      Roundstone knew that Bendett & McHugh would rely on Roundstone's professed skill and experience.

10.     At all times referred to herein, Shea Barclay has been an insurance broker and agent in the business of solicitation, negotiation, procurement, effectuation and ongoing operation of partially self-funded health benefit plans (which require the purchase of health insurance) to businesses with twenty to one thousand employees, such as Bendett & McHugh.

11.     At all times alleged herein, Shea Barclay acted as the agent of both Roundstone and Bendett & McHugh with respect to various aspects of the solicitation, negotiation, procurement, effectuation and the ongoing operation of the subject partially self-funded health benefit plan as described hereafter, which required the purchase of health insurance.

12.     At all times alleged herein, Shea Barclay represented that it delivered the best products to adequately protect its clients.

13.     Under partially self-funded health benefit plans, the employer pays enrollee claims with the assistance of a third party administrator and procures layers of insurance (specific and aggregate stop loss coverage) to limit the employer's exposure for claims beyond agreed upon certain limits.

14.     Both Roundstone and Shea Barclay offered to provide a self-funded health plan with specific and aggregate stop loss coverage and promised Bendett & McHugh that it would achieve savings compared to the cost of a traditional health insurance plan.

15.     Roundstone, with the assistance of Shea Barclay which acted as Roundstone's agent, presented and offered a partially self-funded health benefit plan to Bendett & McHugh titled "Mid-Market Med Group Captive Proposal," dated November 15, 2017, with an effective date of January 1, 2018 ("Plan").

16.     The Plan included premiums for specific stop loss coverage with a deductible of $40,000 per person annually and minimum annual aggregate stop loss coverage with an attachment point of $781,445 based upon 146 enrollees.

17.     Roundstone represented that Bendett & McHugh's annual maximum cost under the Plan would be $1,626,253.00 ("Maximum Cost").

18.     The Plan specifically provided that policy coverage is contingent upon Roundstone's receipt of the first month's premium.

19.     Bendett & McHugh accepted and agreed to the terms of the Plan and on or about December 13, 2017, it paid Roundstone the premiums for specific stop loss coverage, aggregate stop loss coverage, and collateral due.

20.     Roundstone accepted said premiums and all other payments under the Plan and led Bendett & McHugh to believe the Plan was in full force and effect on the effective date of January 1, 2018.

21.     Thereafter, Bendett & McHugh continued to pay all administrative fees, insurance premiums and enrollee claims incurred for the calendar year 2018, as required under the Plan.

22.     In September of 2018, Bendett & McHugh anticipated that its claim payments under the Plan would reach the aggregate stop loss attachment point of $781,445 prior to the end of the 2018 calendar year and Bendett & McHugh contacted Shea Barclay for an explanation as to how its payments would be reimbursed upon reaching and exceeding said attachment point.

23.     In response to Bendett & McHugh's questions concerning aggregate stop loss

coverage, as aforesaid, Shea Barclay informed Bendett & McHugh that there was an issue

concerning the limits of aggregate stop loss coverage which Shea Barclay would work to

resolve, and upon information and belief, no stop loss coverage consistent with and required by

the terms of the Plan had been procured or bound by either Roundstone or Shea Barclay as of

the date that Bendett & McHugh first raised its question about the mechanics of reimbursement

under such policy.

24.     To date, neither Shea Barclay nor Roundstone have produced a valid, binding or

enforceable aggregate stop loss insurance policy in the coverage amounts consistent with and

required by the terms of the Plan.

**COUNT ONE**:  **(Breach of contract as to the defendant, Roundstone Management, LTD.,
LLC)**

25.     Bendett & McHugh repeats and realleges each and every allegation contained in

paragraphs 1 through 24 as if the same were set forth herein in full.

26.     Roundstone's failure to obtain the aggregate stop loss coverage insurance

consistent with and required by the Plan constitutes a breach of its contract with Bendett &

McHugh, causing Bendett & McHugh to sustain damages for the amounts it paid for said

coverage for the calendar year 2018 (as it received no benefit), and the costs it incurred in

excess of the Maximum Cost.

27.     Roundstone's failure to obtain aggregate stop loss coverage insurance consistent

with and required by the Plan constitutes a breach of its contract with Bendett & McHugh,

which caused Bendett & McHugh to incur costs in excess of the Maximum Cost.

28.     Bendett & McHugh's claim payments during the 2018 calendar year resulted in $128,671.48 of payments that should have been reimbursed to Bendett & McHugh under the aggregate stop loss coverage component provided for under the Plan.

29.     Bendett & McHugh made demand upon Roundstone for said $128,671.48 and Roundstone has failed and refused to pay said demanded sum which constitutes a breach of the terms of the Plan resulting in financial loss to Bendett & McHugh for that amount.

30.     As a further direct and proximate result of Roundstone's conduct in failing to provide or ensure that Bendett & McHugh was afforded aggregate stop loss coverage, as aforesaid, Bendett & McHugh terminated the Plan which resulted in its payment of run-out claims and tail stop loss insurance totaling $245,590.26.

**COUNT TWO:  (Breach of implied covenant of good faith and fair dealing as to the defendant, Roundstone Management, LTD., LLC**

31.     Bendett & McHugh repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if the same were set forth herein in full.

32.     After Bendett & McHugh demanded payment of said $128,671.48 for uncovered claims, as aforesaid, Roundstone asserted that it was not responsible to provide or procure aggregate stop loss coverage under the Plan.

33.     Implied in the contracts between Bendett & McHugh and Roundstone is a covenant of good faith and fair dealing which required Roundstone to be truthful and candid in its dealings with Bendett & McHugh.

34.    Roundstone, on its own and with the assistance of its agent, Shea Barclay, breached its implied covenant of good faith and fair dealing under the Plan, impeding Bendett & McHugh's right to receive benefits that it reasonably expected when Roundstone:

a)    knew or should have known that through its marketing and sales activities and the Plan's terms, that Bendett & McHugh was mislead or deceived into believing that Roundstone would provide aggregate stop loss coverage consistent with the Plan or ensure that said coverage would be procured and in place for the 2018 calendar year;

b)    failed to inform and thereafter concealed from Bendett & McHugh that it failed to procure the aggregate stop loss coverage quoted in the Plan;

c)    failed to inform Bendett & McHugh that neither it nor Shea Barclay was successful in procuring stop loss coverage consistent with and required by the Plan;

d)    after learning that aggregate stop loss coverage inconsistent with and not sufficient to satisfy the requirements of the Plan was procured, Roundstone failed to disclose this fact to Bendett & McHugh; and

e)    asserted to Bendett & McHugh that Roundstone was not responsible to provide specific stop loss coverage which is contrary to the promotion, intent and terms of the Roundstone Plan which was accepted by Bendett & McHugh.

**COUNT THREE:  (General Statutes § 42-110a, et seq. (CUTPA) as to the defendant, Roundstone Management, LTD., LLC)**

35.    Bendett & McHugh repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if the same were set forth herein in full.

36.     Roundstone, on its own and with the assistance of its agent, Shea Barclay, impeded Bendett & McHugh's right to receive benefits that it reasonably expected when Roundstone:

a)      knew or should have known that through its marketing and sales activities and the Plan's terms, that Bendett & McHugh was mislead or deceived into believing that Roundstone would procure or provide aggregate stop loss coverage consistent with the Plan or ensure that said coverage was in place for the 2018 calendar year;

b)      failed to inform and thereafter fraudulently concealed from Bendett & McHugh that they failed to procure the aggregate stop loss coverage quoted in the Plan and that neither it nor Shea Barclay was successful in procuring stop loss coverage consistent with and required by the terms of the Plan; and

c)      after learning that aggregate stop loss coverage inconsistent with and not sufficient to satisfy the requirements of the Plan was procured, Roundstone asserted to Bendett & McHugh that Roundstone was not responsible to provide specific stop loss coverage under the Plan which is contrary to the promotion, intent and terms of the Roundstone Plan which was accepted by Bendett & McHugh.

37.     At all times referred to herein, Roundstone individually and with the assistance of its agent, Shea Barclay, was engaged in the business of offering self-funded health care plans and insurance policies to protect against excessive plan expenses, and in the course of doing so:

a)      Roundstone violated General Statutes § 38a-816(1)(A) when after it learned that the premiums and stop loss coverage quoted in the Plan were not available, it failed to disclose this fact to Bendett & McHugh and it consequently failed to correct its false

estimate, illustration and sales presentation, or comparison which thereby intentionally misrepresented the benefits, advantages or conditions of the Plan, as aforesaid;

b)      Roundstone violated General Statutes § 38a-816(1)(F) when after it learned that the premiums and stop loss coverage quoted in the Plan was not available, it failed to disclose this fact to Bendett & McHugh and it consequently induced Bendett & McHugh to rely on an intentional misquote of a premium rate for the purpose of inducing Bendett & McHugh to purchase an insurance policy.

c)      Roundstone violated General Statutes § 38a-816(2), in that it disseminated a statement asserting that Roundstone would provide or procure insurance coverage under the Plan which it knew to be untrue, deceptive and/or misleading by the time Bendett & McHugh accepted the Plan and paid the premiums for the stop loss coverage.

38.     Roundstone's conduct in violating General Statute General Statute § 38a-816(1) and § 38a-816(2), as aforesaid, was immoral, unethical, oppressive, unscrupulous, offends public policy, and caused substantial loss of money to Bendett & McHugh as a result of and in violation of General Statutes § 42-110a, et seq.

**COUNT FOUR:  (Negligence as to the defendant, Shea Barclay)**

39.     Bendett & McHugh repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if the same were set forth herein in full.

40.     Shea Barclay breached its duty to exercise reasonable care, skill and diligence necessary to protect the interests of its client, Bendett & McHugh, and keep it informed of any

significant gaps in insurance coverage in that Shea Barclay, through its agents, servants and/or employees, in one or more of the following ways:

      a)     failed to procure aggregate stop loss coverage consistent with and required by the terms of the Plan when Shea Barclay had undertaken the responsibility to do so;

      b)     failed to notify Bendett & McHugh in a timely manner that aggregate stop loss coverage consistent with and required under the Plan had not been procured;

      c)     allowed and permitted Bendett & McHugh to make premium payments as billed under the Plan for aggregate stop loss coverage when no policy consistent with and required by the terms of the Plan was ever procured;

      d)     represented and guaranteed to Bendett & McHugh that for the calendar year 2018, the Plan would provide a savings of at least $19,655 as compared to traditional health insurance when this was not in fact correct; and

      e)     failed to explain or disclose to Bendett & McHugh in the marketing and promotion of the Plan that Roundstone was not acting as an insurance company, but rather it was only acting as an insurance agent with no responsibility to provide aggregate stop loss coverage under the Plan, and that Shea Barclay was responsible to procure said coverage.

41.    As a direct and proximate result of Shea Barclay's breach of its duties, professional negligence and carelessness, as aforesaid, Bendett & McHugh, incurred losses for uncovered claims in the amount of $128,671.48.

42.    As a further direct and proximate result of Shea Barclay's breach of its duties, professional negligence and carelessness, as aforesaid, Bendett & McHugh terminated the Plan

effective December 31, 2018, which required it to pay run-out claims and purchase tail stop loss insurance, the total cost of which was $245,590.26.

43.      As a further direct and proximate result of Shea Barclay's breach of its duties, professional negligence and carelessness, as aforesaid, Bendett & McHugh sustained the aforesaid damages.

**COUNT FIVE**:  **(General Statutes § 42-110a, et seq. (CUTPA) as to the defendant, Shea Barclay Group, Inc.)**

44.      Bendett & McHugh repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if the same were set forth herein in full.

45.      Shea Barclay impeded Bendett & McHugh's right to receive benefits that it reasonably expected when Shea Barclay:

a)      knew or should have known that through its marketing and sales activities and the Plan's terms, that Bendett & McHugh was mislead or deceived into believing that Roundstone was an insurance company which would procure and provide aggregate stop loss coverage consistent with and required by the terms of the Plan or ensure that said coverage was in place for the 2018 calendar year; and

b)      failed to inform and thereafter fraudulently concealed from Bendett & McHugh that the aggregate stop loss coverage quoted in the Plan could not be purchased for the premiums quoted and that neither it nor Roundstone was successful in procuring aggregate stop loss coverage consistent with and required by the terms of the Plan.

46.    At all times referred to herein, Shea Barclay was engaged in the business of acting as an insurance agent and in doing so:

a)    Shea Barclay violated General Statutes § 38a-816(1)(A) when after it learned that the premiums and stop loss coverage quoted in the Plan were not available, it failed to disclose this fact to Bendett & McHugh and it consequently failed to correct its false estimate, illustration and sales presentation, or comparison which thereby intentionally misrepresented the benefits, advantages or conditions of the Plan, as aforesaid;

b)    Shea Barclay violated General Statutes § 38a-816(1)(F) when after it learned that the premiums and stop loss coverage quoted in the Plan was not available, it failed to disclose this to Bendett & McHugh and it consequently induced Bendett & McHugh to rely on an intentional misquote of a premium rate for the purpose of inducing Bendett & McHugh to purchase an insurance policy.

c)    Shea Barclay violated General Statutes § 38a-816(2), in that it disseminated a statement asserting that Shea Barclay would provide or procure insurance coverage under the Plan which it knew to be untrue, deceptive and/or misleading by the time Bendett & McHugh accepted the Plan and paid the premiums for the stop loss coverage.

47.    Shea Barclay's conduct in violating General Statute § 38a-816(1) and § 38a-816(2), as aforesaid, was immoral, unethical, oppressive, deceptive, unscrupulous, offends public policy, and caused substantial economic injury to Bendett & McHugh as a result of and in violation of General Statutes § 42-110a, et seq.

## **JURY CLAIM**

The plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

WHEREFORE, the plaintiff claims:

    <u>As to the First Count</u>:

        1.    Monetary damages; and

        2.    Interest.

    <u>As to the Second</u>:

        1.    Monetary damages and

        2.    Interest.

    <u>As to the Third Count</u>:

        1.    Actual and punitive damages pursuant to General Statutes § 42-110g(a); and

        2.    Costs and reasonable attorneys' fees pursuant to General Statutes § 42-110g(d).

    <u>As to the Fourth Count</u>:

        1.    Monetary damages.

    <u>As to the Fifth Count</u>:

        1.    Actual and punitive damages pursuant to General Statutes § 42-110g(a); and

2.   Costs and reasonable attorneys' fees pursuant to General Statutes §

42-110g(d).

PLAINTIFF – BENDETT & MCHUGH, P.C.

By: _____

Peter M. Appleton
Appleton & Appleton, LLC
Its Attorneys
266 Pearl Street
Hartford, CT 06103
Tel. 860-246-5481
Fax 860-246-5554
Email: pappleton@appleton-law.com
Federal Bar No: ct03324

and

By: _____

Melvin A. Simon
Cohn Birnbaum & Shea P.C.
Its Attorneys
100 Pearl Street, 12th Floor
Hartford, CT 06103
Tel. 860-493-2200
Fax 860-727-0361
Email: msimons@cbshealaw.com
Federal Bar No.: ct05248